## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **ADAM BARTLETT,** | **CASE NO.:** |
| **c/o David B. Malik** | |
| **8437 Mayfield Road, Suite 101** | |
| **Chesterland, Ohio 44026** | |
| | **JUDGE:** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **CUYAHOGA COUNTY** | |
| **The Justice Center** | **COMPLAINT AND JURY DEMAND** |
| **1219 Ontario Street** | |
| **Cleveland, Ohio 44113** | |
| | |
| **and** | |
| | |
| | |
| **C.O. CORPORAL BAILEY** | |
| **The Justice Center** | |
| **1215 West 3rd Street** | |
| **Cleveland, Ohio 44113** | |
| *Individual and in his official capacity as* | |
| *Cuyahoga County Sheriff Deputy,* | |
| | |
| **and** | |
| | |
| **C.O. JOHN MIRROTTO** | |
| **The Justice Center** | |
| **1215 West 3rd Street** | |
| **Cleveland, Ohio 44113** | |
| *Individually and in his official capacity as* | |
| *Cuyahoga County Sheriff Deputy,* | |
| | |
| **and** | |
| | |
| **C.O. BRIAN CARTWRIGHT** | |
| **The Justice Center** | |
| **1215 West 3rd Street** | |
| **Cleveland, Ohio 44113** | |
| *Individually and in his official capacity as* | |
| *Cuyahoga County Sheriff Deputy,* | |

1

|                                                                                          |     |
|------------------------------------------------------------------------------------------|-----|
| **and**                                                                                  | )   |
| **THE METROHEALTH SYSTEM**<br>**2500 Metrohealth Drive**<br>**Cleveland, Ohio 44109**    | )   |
| **and**                                                                                  | )   |
| **DR. THOMAS TALLMAN**<br>**THE METROHEALTH SYSTEM**<br>**2500 Metrohealth Drive**<br>**Cleveland, Ohio 44109**<br>*In his official capacity as Medical Director*<br>*and Jail Physician,* | ) |
| **and**                                                                                  | )   |
| **LESLIE M. KOBLENTZ, MD**<br>**THE METROHEALTH SYSTEM**<br>**2500 Metrohealth Drive**<br>**Cleveland, Ohio 44109**<br>*Individually and in her official capacity as a*<br>*Jail Physician.* | ) |
| **and**                                                                                  | )   |
| **ALBERT CORENO, PA-C**<br>**THE METROHEALTH SYSTEM**<br>**2500 Metrohealth Drive**<br>**Cleveland, Ohio 44109**<br>*Individually and in his official capacity as a*<br>*Jail Physician's Assistant.* | ) |
| **and**                                                                                  | )   |
| **MICHAEL STRICKER, PA-C**<br>**THE METROHEALTH SYSTEM**<br>**2500 Metrohealth Drive**<br>**Cleveland, Ohio 44109**<br>*Individually and in his official capacity as a*<br>*Jail Physician's Assistant.* | ) |
| **and**                                                                                  | )   |

**MARCUS HARRIS, RN**                                    )
**The Justice Center**                                   )
**1215 W. 3RD Street**                        )
**Cleveland, Ohio 44113**                                )
*Individually and in his official capacity as*           )
*Director of Nursing.*                                   )
                                                         )
**and**                                                  )
                                                         )
**LESLIE CHUTE, RN**                                     )
**THE METROHEALTH SYSTEM**                               )
**2500 Metrohealth Drive**                               )
**Cleveland, Ohio 44109**                                )
*Individually and in her official capacity as a*         )
*Jail Nurse.*                                            )
                                                         )
    **and**                          )
                                                         )
**JANET HODGSON, LPN**                                   )
**The Justice Center**                                   )
**1215 West 3rd Street**                      )
**Cleveland, Ohio 44113**                                )
*Individually and in her official capacity as a*         )
*Jail Nurse.*                                            )
                                                         )
    **and**                          )
                                                         )
**KRISTINA CASHIN, RN**                                  )
**THE METROHEALTH SYSTEM**                               )
**2500 Metrohealth Drive**                               )
**Cleveland, Ohio 44109**                                )
*Individually and in her official capacity as a*         )
*Jail Nurse.*                                            )
                                                         )
    **and**                          )
                                                         )
**GWENDOLYN BREMER, RN**                                 )
**THE METROHEALTH SYSTEM**                               )
**2500 Metrohealth Drive**                               )
**Cleveland, Ohio 44109**                                )
*Individually and in her official capacity as a*         )
*Jail Nurse.*                                            )
                                                         )
    **and**                          )
                                                         )
**JOE-ANN COOPER, RN**                                   )

THE METROHEALTH SYSTEM )
2500 Metrohealth Drive )
Cleveland, Ohio 44109 )
*Individually and in her official capacity as a* )
*Jail Nurse.* )
)
     **and** )
)
JOHN AND JANE DOE POLICY )
MAKERS #1-5
The Justice Center
1215 West 3rd Street
Cleveland, Ohio 44113,
*Individually and in their official capacities*

     **and**

JOHN AND JANE DOE #6-10,
The Justice Center
1215 West 3rd Street
Cleveland, Ohio 44113,
*Individually and in their official capacities*

     **and**

JOHN AND JANE DOE #11-15,
THE METROHEALTH SYSTEM
2500 Metrohealth Drive
Cleveland, Ohio 44109
*Individually and in their official capacities*

     **Defendants.**

## I. INTRODUCTION

1.  This civil rights case challenges Defendants' failure to provide constitutionally

    adequate medical care and medical care consistent with community standards of care to

    Adam Bartlett while he was incarcerated at the Cuyahoga County Corrections Center

    ("CCCC"). Defendants knew Mr. Bartlett suffered from alcohol abuse, benzodiazepine

    dependence, and opioid abuse when he arrived at CCCC. Consequently, Defendants

    also knew that Mr. Bartlett had a potential to suffer from serious, life threatening

withdrawal from alcohol, benzodiazepines, and opiates. Mr. Bartlett did, in fact, suffer from severe and debilitating withdrawal while incarcerated at the CCCC. As a result of his withdrawal, Mr. Bartlett's medical condition and mental health deteriorated over the course of his incarceration. Mr. Bartlett's severe withdrawal caused him at one point to uncontrollably urinate and defecate on himself. Instead of addressing his obvious medical needs, Mr. Bartlett was punitively handcuffed to a wheelchair and then punitively forced into a restraint chair. Defendants knew that Mr. Bartlett suffered from serious, life threatening withdrawal and failed to provide him the proper medical care and treatment for these conditions. Defendants' failure to provide Mr. Bartlett adequate medical care directly resulted in Mr. Bartlett continuing, unabated to suffer from severe and debilitating withdrawal while in the custody and care of CCCC. Each Defendants' deliberate indifference and negligence in providing adequate medical care to Mr. Bartlett proximately caused Mr. Bartlett to suffer a lengthy and obvious period of traumatizing hallucinations. Each Defendant's deliberate indifference and negligence in providing adequate medical care to Mr. Bartlett proximately caused Mr. Bartlett to suffer serious and severe and debilitating mental and physical pain and suffering. Defendants acted willfully, wantonly, recklessly, and maliciously when they failed to provide Mr. Bartlett adequate medical care. Defendants knew or should have known from his obvious symptoms that Mr. Bartlett was suffering from withdrawal from alcohol, benzodiazepines, and opiates. Defendants also knew and /or should have known that withdrawal from alcohol, benzodiazepines, and opiates causes serious and dangerous physical and emotional effects in humans, and that people need to be properly weaned off of these drugs to avoid potentially life-threatening injury.

CCCC has a pattern, practice and a history of causing individuals going through withdrawal to needlessly suffer and even die, as was the case with Sean Levert.

## II. JURISDICTION

2. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. An affidavit pursuant to Ohio Rule Civ. Proc. 10(D) (2) is attached in support of the medical claims. Venue is proper in this Division.

## III. PARTIES

3. Adam Bartlett was a resident of Cleveland, Ohio and Cuyahoga County, Ohio at all times relevant to this lawsuit. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution and the laws of the State of Ohio.

4. Defendant Cuyahoga County is a unit of local government organized under the laws of the State of Ohio. Defendant Cuyahoga County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

5. Defendant Corporal Bailey is and was at all times relevant to this action a corrections officer (C.O.), employed in the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity.

6. Defendant John Mirroto is and was at all times relevant to this action corrections officer (C.O.), employed in the CCCC.  Defendant is a "person" under 42 U.S.C. §

1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity.

7. Defendant Brian Cartwright is and was at all times relevant to this action corrections officer (C.O.), employed in the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity.

8. Defendant The MetroHealth System is and was all times relevant to this action the contracted party providing through its medical professionals, necessary, regular, and routine medical services, examinations, and treatment to the inmates of the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

9. Defendant Dr. Thomas Tallman, D.O. is and was at all times relevant to this action a jail physician and Medical Director serving Cuyahoga County at the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity.

10. Defendant Leslie Koblentz, MD is and was at all times relevant to this action a jail physician serving Cuyahoga County at the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  She is sued in his individual and official capacity.

11. Defendant Albert Coreno, PA-C is and was at all times relevant to this action a jail physician's assistant serving Cuyahoga County at the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity.

12. Defendant Michael Stricker, PA-C is and was at all times relevant to this action a jail physician's assistant serving Cuyahoga County at the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

13. Defendant Marcus Harris, Director of Nursing, is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

14. Defendant Leslie Chute, RN is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in his individual and official capacity.

15. Defendant Janet Hodgson, LPN is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in his individual and official capacity.

16. Defendant Kristina Cashin, RN is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in his individual and official capacity.

17. Defendant Gwendolyn Bremer, RN is and was at all times relevant to this action a nurse employed in the CCCC. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in his individual

and official capacity.

18. Defendant Joe-Ann Cooper, RN is and was at all times relevant to this action a nurse employed in the CCCC.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  She is sued in his individual and official capacity.

19. Defendants John and Jane Doe Policy Makers #1-5 are individuals and/or entities that are responsible for establishing policies, procedures, and customs that ensure CCCC operates in a manner that keeps inmates safe. They are responsible for training those employed in CCCC to ensure the safety and wellbeing of inmates in CCCC. They are also responsible for investigating incidents where inmates are harmed to ensure that such incidents are prevented.

20. Defendants John and Jane Does #6-10 are corrections and medical staff employed by Cuyahoga County who, individually or in concert with the other defendants, were responsible for providing correctional and/or medical/mental health care to Adam Bartlett when he was incarcerated in CCCC in September of 2016. At this time these persons are not known to Plaintiff but will be named when they are discovered.

21. Defendants John and Jane Does #11-15 are entities, individually or in concert with the other defendants, were responsible for providing correctional and/or medical/mental health care to Adam Bartlett when he was incarcerated in CCCC in September of 2016. At this time these persons are not known to Plaintiff but will be named when they are discovered.

## IV. FACTS

**A. September 7, 2016: Mr. Bartlett was arrested for violation of the conditions of probation and was booked into CCCC.**

22. Adam Bartlett reported to his Probation Officer, Amanda LaBanc, on September 7, 2016.

23. When Mr. Bartlett arrived at the Probation Department, there was an Order to Arrest him.

24. The offense listed on the Commitment Information for Cuyahoga County Jail sheet was "Drug Poss/Poss Urine."

25. Mr. Bartlett was on probation for the original offense of Drug Possession.

26. Mr. Bartlett was escorted to CCCC by Cuyahoga County Sheriff's Deputies.

27. On September 7, 2016 at approximately 05:23, Mr. Bartlett was booked into the CCCC.

28. Not knowing that he was going to be arrested, Mr. Bartlett did not have his prescription Xanax with him, but he was careful to report that he was prescribed Xanax 2 mg, 3 times a day. Mr. Bartlett also reported alcohol and opioid abuse.

29. Despite knowledge of Mr. Bartlett's prescription for Xanax, CCCC medical and corrections staff unnecessarily and deliberately withheld prescribing medication even though they knew that it presented a significant danger to do so.

30. Xanax is a benzodiazepine and presents significant risks of withdrawal to humans. Benzodiazepine withdrawal can result in psychosis characterized by dysphoric manifestations, irritability, aggressiveness, anxiety, and hallucinations. It also causes an increased risk of suicide and even a risk of seizure. It is essential that those taking Xanax be weaned off of it slowly so that the risk of these dangerous side effects are minimized.

31. CCCC medical and corrections staff, including its agents, employees and

subcontractors, knew of the serious risks presented by benzodiazepine withdrawal and failed to provide adequate medical care.

**B. September 8, 2016: Mr. Bartlett was inadequately assessed by Medical Staff in CCCC.**

32. On September 8, 2016 at approximately 08:48, an inadequate CCC Prisoner Assessment was performed by Defendant Leslie Chute, RN on Mr. Bartlett.

33. Despite being told about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendant Chute and other Defendant CCCC medical staff deliberately failed to assess Mr. Bartlett for withdrawal symptoms, failed to treat his withdrawal appropriately, and failed to refer Mr. Bartlett to the substance abuse program within CCCC.

34. Despite being told about Mr. Bartlett's prescription for Xanax his alcohol abuse, and his opioid abuse, Defendant Chute and other Defendant CCCC medical staff deliberately failed to start Mr. Bartlett on a withdrawal protocol.

35. Despite being told about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendant Chute and other Defendant CCCC medical staff deliberately failed to have Mr. Bartlett be seen by a doctor or mental health provider.

36. Despite being told about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendant Chute and other Defendant CCCC medical staff deliberately failed to house him in the medial housing unit.

37. Despite being told about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendant Chute and other Defendant CCCC medical staff deliberately failed to refer to the alcohol and opiate withdrawal protocols for additional information on assessing and treating Mr. Bartlett.

38. Defendants are supposed to be properly trained to recognize alcohol and other drug problems in inmates, including withdrawal. Defendant nurses are to be properly supervised by the director of nursing, in this case Marcus Harris.

39. Defendants knew or should have known of the risks of withdrawal from benzodiapines, alcohol, and opiates because they are responsible for housing inmates like Mr. Bartlett and observing them for the dangers of withdrawal.

**C. September 12, 2016: A Medical Emergency was called for Mr. Bartlett.**

40. On September 12, 2016 at approximately 19:08, Defendant C.O. Kowalski was making rounds and observed Mr. Bartlett lying on the floor next to his cell.

41.  C.O., Corporal Kremer arrived in the pod and observed Mr. Bartlett's condition after which Kowalski activated a PAT #49 and called out a Medical Emergency.

42. C.O. Holt, C.O. Sergeant Brewer (SRT), and medical nurses arrived and the Medical Emergency was secured at 7:21 p.m..

43. Mr. Bartlett was brought to medical at approximately 7:45 p.m., and was seen by Defendant Janet Hodgson, LPN in the dispensary for the Medical Emergency. It was recorded that Mr. Bartlett was refusing to talk, uncooperative, and unpredictable. He was admitted to MHU on FP until seen by MH provider.

44. Mr. Bartlett was in fact not being uncooperative or unpredictable. He was suffering from severe and dangerous withdrawal, and was unable to communicate.

45. At approximately 7:47 p.m., Mr. Bartlett was seen by Defendant PA Albert Coreno for evaluation of "catatonic state." Defendant PA Coreno noted during this evaluation that Mr. Bartlett had a history of "alcohol abuse, on Xanax 6 mg daily last use about 4 days ago. Patient not answering questions."

46. Defendant PA Coreno also went through Mr. Bartlett's Past Medical History Diagnosis and found "H/O alcohol abuse", "Benzodiazepine dependence", and "Opioid abuse."

47. The recorded plan was a psych referral, UA Tox Screen, and BMP.

48. PA Coreno determined that Mr. Bartlett was "not cooperating to perform full neuro exam" and then determined that Mr. Bartlett's Clinical Institute Withdrawal Assessment for Alcohol (CIWA) score on 9/12/16 was a two (2).

49. Mr. Bartlett was catatonic, completely disoriented, and obviously experiencing hallucinations. The disorientation and continuous tactile, auditory, and visual hallucinations alone should have resulted in a CIWA score of twenty-five (25).

50. Jail and/or medical protocols require transfer to the ICU for scores greater than twenty (20).

51. Defendant PA Coreno's assessment notes includes a note "H/O alcohol abuse", "Benzodiazepine dependence", and "Opioid abuse" and "Altered mental status, unspecified altered mental status type." But then Defendant Coreno then added "Malingering" subjectively.

52. Despite Mr. Bartlett showing obvious signs of severe and dangerous withdrawal, Defendant Coreno ended his assessment notes indicating and concluding that Mr. Bartlett was faking.

**D. September 13, 2016: Mr. Bartlett's Serious Medical Needs were Negligently and Indifferently Treated with a Restraint Chair.**

53. On September 13, 2016, at approximately 6:35 p.m., Defendant C.O. John Mirrotto was collecting dinner trays when he noticed that Mr. Bartlett was so ill that he had defecated and urinated on the floor of his cell.

54. Defendant C.O. Mirrotto called Master Control and requested Defendant C.O.

Corporal Bailey come to Mr. Bartlett's cell.

55. Instead of calling a Medical Emergency for Mr. Bartlett and getting him the necessary medical assistance he required, Defendants C.O. Mirrotto and C.O. Bailey punitively put Mr. Bartlett into a restraint chair. Defendant C.O. Brian Cartwright arrived and assisted Defendants Mirrotto and Bailey in forcing Mr. Bartlett into the restraint chair for losing control of his bowels and bladder. Defendant Cartwright used his left and right hands to secure Mr. Bartlett's wrists, shoulders, and ankles to the chair.

56. Mr. Bartlett, who was obviously in serious need of proper medical attention and not punishment, was then strapped into the restraint chair by all three Defendant officers and moved to a holding area.

**E. September 13, 2016: Mr. Bartlett's obvious and continued signs of severe and dangerous withdrawal are completely disregarded by Medical personnel in CCCC.**

57. On September 13, 2016 at approximately 11:25 a.m., Mr. Bartlett was seen by Defendant Dr. Koblentz.

58. Again, Mr. Bartlett was showing obvious signs of severe and dangerous withdrawal.

59. Mr. Bartlett was obviously disoriented and was obviously suffering from auditory and visual hallucinations. He was muttering statements such as, "I don't know what drugs they were givin me" and "I need an attorney". His speech was very slurred, his mouth was clenched. He was rigid and was refusing to answer questions.

60. Defendant Dr. Koblentz determined that Mr. Bartlett was "W/D (withdrawing) from some substance" and ordered labs.

61. She was deliberately indifferent to Mr. Bartlett's obvious serious medical need and took no further action to help him. She acted negligently as well.

62. On September 13, 2016 at approximately 12:57 p.m., the only note in Mr. Bartlett's

medical record is "Pt not in dispensary when called". Again, nothing was done to treat Mr. Bartlett's serious medical needs.

63. On September 13, 2016 at approximately 4:42 p.m., Defendant Kristina Cashin, RN observed Mr. Bartlett on the floor of his cell and Mr. Bartlett and wrote that he "would not get up off the floor." She then wrote that Mr. Bartlett was "[s]lightly disoriented unsure of the date."

64. Mr. Bartlett was showing obvious signs of severe and dangerous withdrawal and nothing was done to treat his serious medical needs.

65. Defendant Cashin RN took no action to help Mr. Bartlett.

66. Almost four hours later at approximately 4:42 p.m. another medical emergency was called when Mr. Bartlett was found on the floor of his cell as he continued to be disoriented and he was slurring his speech.

67. At approximately 5:03 p.m., Mr. Bartlett was seen by Defendant PA Michael Stricker.

68. Defendant PA Strickler also went through Mr. Bartlett's Past Medical History Diagnosis and found "H/O alcohol abuse", "Benzodiazepine dependence", and "Opioid abuse."

69. Mr. Bartlett told Defendant PA Strickler that "he feels like he is in a booth with Hillary Clinton."

70. No CIWA was performed, but Mr. Bartlett's disorientation and continuous tactile, auditory, and visual hallucinations alone should have resulted in a CIWA score of twenty-five (25).

71. Jail and/or medical protocols require transfer to the ICU for scores greater than twenty (20).

72. Despite Defendant PA Strickler's findings of "H/O alcohol abuse", "Benzodiazepine dependence", and "Opioid abuse" and that Mr. Bartlett thought he was in the booth with Hillary Clinton and exhibiting "disordered thought content", Defendant PA Strickler wrote, "Pt has no medical concerns at this time" And under "Additional clinical concerns today" wrote "none".

73. Defendant PA Strickler completely ignored the obvious signs of Mr. Bartlett's severe and dangerous withdrawal.

**F. September 14, 2016: Mr. Bartlett's obvious signs of severe and dangerous withdrawal are completely disregarded by Medical personnel in CCCC.**

74. On September 14, 2016 at approximately 6:14 a.m., Defendant Gwendolyn Bremer, RN performed her nursing rounds and observed Mr. Bartlett standing at the door looking out the window asking to see the FBI.

75. No CIWA was performed, but Mr. Bartlett's disorientation and continuous tactile, auditory, and visual hallucinations alone should have resulted in a CIWA score of twenty-five (25).

76. Jail and/or medical protocols require transfer to the ICU for scores greater than twenty (20).

77. Despite Defendant Bremer, RN observing Mr. Bartlett showing obvious signs hallucinations and severe and dangerous withdrawal, Defendant Nurse Bremer wrote, "Inmate has no other concerns at this time"

78. Defendant Nurse Bremer completely ignored the obvious signs of severe and dangerous withdrawal and did nothing to treat him for his serious medical needs.

79. On September 14, 2016 at approximately 2:46 p.m., Defendant Joe-Ann Cooper, RN determined that she was not able to assess CIWA on 09/13/2016 and on 09/14/2016

16

"due to inmate's confusion and noncompliance with requests and orders. CIWA was attempted multiple times on both days."

80. Mr. Bartlett was not noncompliant, he was hallucinating and suffering from severe and dangerous withdrawal.

81. Defendant Nurse Bremer completely ignored the obvious signs of severe and dangerous withdrawal and did nothing to treat him for his serious medical needs.

## G. Mr. Bartlett's Agonizing Time in CCCC.

82. While in CCCC, Mr. Bartlett experienced dangerous and severe withdrawal. Defendants were deliberately indifferent to his withdrawal and the obvious related symptoms.

83. Mr. Bartlett's account of his time in CCCC can only be described as horrible terrifying nightmares that went on for at least seven days.

84. Mr. Bartlett's hallucinations were filled with children being murdered by other children, death, illegal drug activity, imprisonment, gangs that were trying to murder him, election corruption, the FBI looking for him, and tremendous and overwhelming fear of all of these things.

85. For days, Mr. Bartlett was filled with terror while he hallucinated that a giant balloon filled with the AIDS virus was looming over him about to burst.

86. The hallucinations convinced Mr. Bartlett that he should be fearful for his own life and the lives and safety of his loved ones.

87. The hallucinations were torture.

88. Finally, on September 15, 2016, after experiencing a horrific nightmare of hallucinations, a klonopin taper was ordered by Defendant Dr. Koblentz "to decrease

any confusion re: Benxo w/d".

**H. Policies, Practices and Culpable Conduct.**

89. Withdrawal from benzodiazepines and the related symptoms is a serious medical need.

90. Withdrawal from alcohol and the related symptoms is a serious medical need.

91. Withdrawal from opiates and the related symptoms is a serious medical need.

92. Severe and dangerous withdrawal and the related symptoms can be prevented if proper protocols are in place and followed.

93. In September 2016, each of the Defendants knew that withdrawal was a serious medical need.

94. Furthermore, Defendants were aware that inmates commonly suffer from withdrawal and that withdrawal poses a substantial risk of harm to inmates who are not properly treated.

95. Defendants Cuyahoga County and The MetroHealth System have an agreement for The MetroHealth System to provide medical care to inmates in CCCC.

96. Defendants Dr. Tallman and Dr. Koblentz were physicians employed by Defendant The MetroHealth System responsible for medical care to inmates at CCCC.

97. Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, Marcus Harris, and John and Jane Doe Policy Makers established the medical policies, practices, and customs at CCCC.

98. Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, Marcus Harris, and John and Jane Doe Policy Makers are responsible for training all of the CCCC staff with respect to providing medical care to inmates at CCCC.

99. All Defendants were deliberately indifferent to Mr. Bartlett's serious medical needs.

100. Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, Marcus Harris, and John and Jane Doe Policy Makers failed to have adequate policies, procedures, customs, usages, and protocols regarding identification, referral, and treatment due inmates experiencing withdrawal from alcohol, benzodiazepines, and opiates and those inadequate policies, procedures, customs, usages, and protocols were the moving force behind the injury suffered by Mr. Bartlett.

101. Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, Marcus Harris, and John and Jane Doe Policy Makers were deliberately indifferent to the serious medical needs of Mr. Bartlett by failing to train and supervise staff to implement adequate jail policies, procedures, customs, usages, and protocols that would properly address the obvious and known health and safety risks experienced by inmates with symptoms of withdrawal.

102. Mr. Bartlett was not properly monitored or treated for his withdrawal. This failure was caused by the policies, procedures, customs, usages, and protocols implemented by Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, Marcus Harris RN, and John and Jane Doe Policy Makers.

103. The failure by Defendants Dr. Tallman, Dr. Koblentz, PA Coreno, PA Strickler, Marcus Harris RN, Chute RN, Hodgson LPN, Cashin RN, Bremer RN, Cooper RN, and John and Jane Does #11-13 to treat Mr. Bartlett's withdrawal was negligent, knowing, intentional, reckless, wanton, and deliberately indifferent to the serious medical needs of Mr. Bartlett.

104. All Defendants acted negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the serious medical needs of Mr.

Bartlett.

105. The conduct of Defendants shocks the conscience, violates the standards of decency in an evolving society, and betrays the trust that inmates and the public place in jail staff to provide proper medical care for those over whom they exercise custody.

106. Defendants Bailey, Mirroto, and Cartwright were deliberately indifferent to the serious medical needs of Mr. Bartlett when they punitively forced Mr. Bartlett in a restraint chair because he was suffering from severe and dangerous withdrawal and had lost control of his bowels and bladder.

107. Defendants Dr. Tallman and Dr. Koblentz fell below the standard of care in their treatment of Mr. Bartlett.

108. Defendants PA Coreno and PA Strickler fell below the standard of care in their treatment of Mr. Bartlett.

109. Defendants Harris, Chute, Hodgson, Cashin, Bremer, Cooper, and John and Jane Does #11-15 fell below the standard of care in their treatment of Mr. Bartlett.

110. Defendants Dr. Tallman and Dr. Koblentz owed a duty to Mr. Bartlett, breached that duty, and as a direct and proximate result of that breach, Mr. Bartlett suffered severe and dangerous withdrawal and horrific hallucinations.

111. Defendants PA Coreno and PA Strickler owed a duty to Mr. Bartlett, breached that duty, and as a direct and proximate result of that breach, Mr. Bartlett suffered severe and dangerous withdrawal and horrific hallucinations.

112. Defendants Harris, Chute, Hodgson, Cashin, Bremer, Cooper, and John and Jane Does #11-15 owed a duty to Mr. Bartlett, breached that duty, and as a direct and proximate result of that breach, Mr. Bartlett suffered severe and dangerous withdrawal and

horrific hallucinations.

113. Despite knowledge about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendants Dr. Tallman, Dr. Koblentz, Coreno, Strickler, Harris, Chute, Hodgson, Cashin, Bremer, John and Jane Does #11-15 deliberately failed to assess Mr. Bartlett for withdrawal symptoms, failed to treat his withdrawal appropriately, and failed to refer Mr. Bartlett to the substance abuse program within CCCC.

114. Despite knowledge about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendants Dr. Tallman, Dr. Koblentz, Coreno, Strickler, Harris, Chute, Hodgson, Cashin, Bremer, John and Jane Does #11-15 deliberately failed to start Mr. Bartlett on a withdrawal protocol.

115. Despite knowledge about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendants Dr. Tallman, Dr. Koblentz, Coreno, Strickler, Harris, Chute, Hodgson, Cashin, Bremer, John and Jane Does #11-15 deliberately failed to house him in the medical housing unit.

116. Despite knowledge about Mr. Bartlett's prescription for Xanax, his alcohol abuse, and his opioid abuse, Defendants Dr. Tallman, Dr. Koblentz, Coreno, Strickler, Harris, Chute, Hodgson, Cashin, Bremer, John and Jane Does #11-15 deliberately failed to refer to the alcohol and opiate withdrawal protocols for additional information on assessing and treating Mr. Bartlett.

117. Defendants are supposed to be properly trained to recognize alcohol and other drug problems in inmates, including withdrawal.

118. Defendants knew of the risks of withdrawal from benzodiapines, alcohol, and opiates

because they are responsible for housing inmates like Mr. Bartlett and observing them for the dangers of withdrawal.

119. For the entirety of his incarceration, Mr. Bartlett was supposed to be assessed and monitored for withdrawal from benzodiazepines, alcohol, and opiates and was supposed to be weaned off his prescribed medication Xanax.

120. Mr. Bartlett's condition deteriorated rapidly and significantly as a result of the failure to receive his medication and the failure to be weaned off his medication.

121. As Mr. Bartlett's condition slowly deteriorated over the course of his incarceration, nothing was done to prevent his continued physical and emotional deterioration.

122. The failure by the Defendants Dr. Tallman, Dr. Koblentz, Coreno, Strickler, Harris, Chute, Hodgson, Cashin, Bremer, John and Jane Does #11-15 to diagnose and treat benzodiazepine withdrawal symptoms of Mr. Bartlett was negligent, knowing, intentional, reckless, willful, wanton, and malicious.

123. Defendants were deliberately indifferent to the serious medical needs of Mr. Bartlett.

124. Between September 7, 2016 and September 15, 2016, Defendants failed to take even minimally adequate measures to treat the foreseeable and dangerous withdrawal symptoms experienced by Mr. Bartlett.

125. The confusion, inability to stand, dehydration, loss of muscle control, loss of bowel and bladder control, and horrific hallucinations were all foreseeable as known symptoms of benzodiazepine withdrawal. These symptoms were known by Defendants to pose a substantial risk of serious injury and/or death.

126. Defendants failed to properly observe, assess, examine, diagnose and treat Mr. Bartlett for his severe withdrawal. These Defendants' failures were negligent, reckless,

knowing, intentional, willful, wanton, malicious and deliberately indifferent, all in contravention of the applicable standard of care.

127. The failure to train, inadequate policies and procedures and conduct of Defendants were a moving force behind the constitutional and other violations.

128. The failure to train, inadequate policies and procedures and conduct of defendants constitutes a pattern and practice of both the CCCC, MetroHealth and each defendant.

129. Defendants were deliberately indifferent to Mr. Bartlett's serious medical condition. Each witnessed Mr. Bartlett suffering from the severe and dangerous withdrawal. This failure by each was negligent, knowing, intentional, willful, wanton, reckless, malicious, and deliberately indifferent. As a result, Mr. Bartlett suffered extreme, extended pain and anguish and medical danger.

## V. FIRST CAUSE OF ACTION 42 U.S.C. § 1983

130. Defendants have, under color of state law, deprived Mr. Bartlett of the rights, privileges and immunities secured by the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution including but not limited to the right to be free from cruel and unusual punishment, the right to be protected, and the right to medical care when incarcerated.

131. Defendants were deliberately indifferent to Mr. Bartlett's serious medical needs. They knew that alcohol, benzodiazepine, and opiate withdrawal are all serious medical conditions, knew that Mr. Bartlett's alcohol abuse, prescribed medications, and opioid abuse put him at risk for developing that withdrawal if he was not properly assessed, observed, monitored, placed on a proper withdrawal protocol, and treated for his withdrawal. When Mr. Bartlett began to suffer withdrawal these Defendants did

nothing to respond to his increasingly dangerous and serious medical needs, despite Mr. Bartlett showing obvious signs of severe and dangerous withdrawal.  Mr. Bartlett experienced serious withdrawal and suffered through preventable horrific physical and mental agony and pain.

132. Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, Marcus Harris, and John and Jane Doe Policy Makers failed to adequately train and supervise CCCC corrections officers and medical and nursing staff in the intake, assessment and correctional and medical care of inmates who arrive at CCCC while taking prescription drugs in the benzodiazepine class, including Mr. Bartlett.

133. Defendant Cuyahoga County failed to provide an adequate policy to guide corrections officers who encountered inmates withdrawing from benzodiazepines, alcohol, and opiates.

134. Defendant The MetroHealth System failed to provide an adequate policy to guide medical personnel who encountered inmates withdrawing from benzodiazepines, alcohol, and opiates.

135. Defendants Cuyahoga County, The MetroHealth System, Dr. Tallman, and Marcus Harris RN failed to adequately train and supervise the corrections and medical Defendants regarding inmates withdrawing from benzodiazepines, alcohol, and opiates.

136. The rules, regulations, customs, policies and procedures of Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System, and Marcus Harris, John and Jane Doe Policy Makers were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Mr. Bartlett.

137. Although Defendants Dr. Tallman, Cuyahoga County, The MetroHealth System,

Marcus Harris, and John and Jane Doe Policy Makers were on obvious notice to train and supervise CCCC staff in the area of day to day jail operations, policies and procedures related to medical and mental health assessment and follow up care of inmates, Defendants failed to adequately train and supervise CCCC staff in that regard. Defendant policy makers failed to institute any adequate, reality-based training programs relating to the incarceration, care and treatment of individuals such as Mr. Bartlett.  As such the Defendants were deliberately indifferent to the serious medical needs of Mr. Bartlett.

## VI. SECOND CAUSE OF ACTION-MALPRACTICE BY PHYSICIAN

138. After Mr. Bartlett was admitted to CCCC, Defendants Dr. Tallman and Dr. Koblentz failed to use reasonable care in terminating his Xanax prescription medicine and in diagnosing and treating the symptoms experienced by Mr. Bartlett when his medication was terminated. Defendants Dr. Tallman and Dr. Koblentz breached their duty of care to Mr. Bartlett.

139. As Medical Director, Defendant Dr. Tallman failed to insure that adequate policies were in place at CCCC to appropriately identify, diagnose and treat inmates entering CCCC who were at risk of experiencing a medical crisis if their medication was interrupted.

140. Defendant Dr. Tallman also created policies, procedures and customs within CCCC that mandated inmates would not receive certain medications while imprisoned, including the medication Mr. Bartlett was taking when he first entered the Jail: Xanax.

141. Defendant Dr. Tallman also failed to train and supervise the nursing staff and corrections staff to provide services consistent with the standard of care.  As a result of

this failure, the nursing and corrections staff failed to prevent Mr. Bartlett from suffering from horrifying, life-threatening, painful, and dangerous benzodiazepine withdrawal.

142. The conduct of Defendant Dr. Tallman deviated from standard medical practice, all in violation of Ohio law. His conduct was a proximate cause of Mr. Bartlett's injury. See Knoll Affidavit of Merit (attached as Exhibit 1).

## VII. THIRD CAUSE OF ACTION- NEGLIGENCE BY PHYSICIAN'S ASSISTANTS

143. After Mr. Bartlett was admitted to the care and custody of CCCC, Defendants PA Coreno and PA Strickler breached their duty to provide medical care to Mr. Bartlett consistent with standard of care and standard practices, all in violation of Ohio law.

144. The conduct of Defendants PA Coreno and PA Strickler proximately caused Mr. Bartlett's injuries. See Knoll Affidavit of Merit (attached as Exhibit 1).

## VIII. FOURTH CAUSE OF ACTION-NEGLIGENCE BY NURSES

145. After Mr. Bartlett was admitted to the care and custody of CCCC, Defendants Harris, Chute, Hodgson, Cashin, Bremer, and Cooper breached their duty to provide medical care to Mr. Bartlett consistent with standard of care and standard practices, all in violation of Ohio law.

146. The conduct of Defendants Harris, Chute, Hodgson, Cashin, Bremer, and Cooper proximately caused Mr. Bartlett's injuries. See Knoll Affidavit of Merit (attached as Exhibit 1).

## IX. FOURTH CAUSE OF ACTION-NEGLIGENCE BY DR. TALLMAN AND DR. KOBLENTZ

147. Defendants Dr. Tallman and Dr. Koblentz owed a duty of reasonable care to Mr.

Bartlett.

148. Defendants Dr. Tallman and Dr. Koblentz had a duty to provide qualified personnel to perform medical services at CCCC and a duty to use reasonable care in determining the qualifications of its contractors, agents and employees when providing medical services.

149. Defendants Dr. Tallman and Dr. Koblentz breached his duty of care to Mr. Bartlett by failing to provide appropriate and qualified medical personnel to care for Mr. Bartlett.

## X. FIFTH CAUSE OF ACTION – BATTERY

150. Under Ohio law, Defendants Mirrotto's, Bailey's, and Cartwright's acts of touching Mr. Bartlett constitute battery.

151. Defendants Mirrotto, Bailey, and Cartwright engaged in an unprivileged, intentional, harmful, and offensive touching of Mr. Bartlett.

152. Defendants Mirtotto's, Bailey's, and Cartwright's battery was a direct and proximate cause of some of Mr. Bartlett's permanent injuries.

153. These actions were done with malicious purpose, in bad faith, and in a wanton, willful, and reckless manner.

## XI. SIXTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

154. As a direct and proximate result of all Defendants' acts, Mr. Bartlett has suffered, and will continue to suffer, serious psychological pain and distress, which is serious and of a nature that no reasonable person could be expected to endure.

155. Defendants knew that their treatment of Mr. Bartlett would cause severe emotional distress and intended that their actions would result in serious emotional distress to Mr. Bartlett. Defendants' conduct was so extreme and outrageous as to go beyond all

possible bounds of decency, and they directly and proximately caused Mr. Bartlett's psychic injury.

## XII. JURY DEMAND

156. Plaintiff hereby demands a trial by jury of all issues triable by jury.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A.     Award Plaintiff compensatory damages in an amount to be shown at trial;

B.      Award Plaintiff punitive damages (except against the County) in an amount to be shown at trial;

C.     Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.     Pre and post judgment interest;

E.     Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Sara Gedeon (0085759)
David B. Malik (0023763)
Attorney for Plaintiff
Sara Gedeon (0085759)
Attorney for Plaintiff
8437 Mayfield Road, Suite 101
Chesterland, OH 44026
(440) 729-8260
(440) 729-8262 fax
dbm50@sbcglobal.net
sgedeon1021@gmail.com